IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 NOV -3 A 9: 29

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CECELIA OWENS,

    PLAINTIFF,

V.

CIVIL ACTION NO.

2:06CV999-ID

LIGHTHOUSE COUNSELING
CENTER, INC.,

    DEFENDANT.　　　　　　　　　　JURY TRIAL DEMANDED

## COMPLAINT

**I. JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 2201 and 2202; 42 U.S.C. § 2000e et seq. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e et seq (Title VII), and 42 U.S.C. §1981 (§1981). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by Title VII et. seq. providing for injunctive and other relief against race discrimination and retaliation.

2. Plaintiff timely filed her charge of race discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

1

discriminatory act ("Exhibit A"). Plaintiff further filed this suit within ninety (90) days after receipt of her right-to-sue letter issued by the EEOC ("Exhibit B").

## II. PARTIES

3. Plaintiff, Cecelia Owens, hereinafter "Plaintiff," is an African American citizen of the United States, and a resident of Montgomery County, Alabama, who was employed by Defendant in Montgomery, Alabama.

4. Defendant, Lighthouse Counseling Center, Inc., hereinafter "Defendant," is an entity subject to suit under Title VII. Defendant employs at least fifteen (15) persons and conducts business in Birmingham, Alabama.

## III. STATEMENT OF FACTS

5. Plaintiff realleges and incorporates by reference paragraphs 1 through 4 above with the same force and effect as if fully set out in specific detail below.

6. Plaintiff began her employment on September 12, 2005 as the Deputy Director. As Deputy Director, Plaintiff had five director reports, including the business manager, who was in charge of finances of Defendant. While employed with Defendant, Plaintiff performed her job in at least a competent manner.

7. Plaintiff's primary job was to act as liaison between the staff and the Executive Director, Candyce DeKruyff (white). Plaintiff also was a grant writer.

8. Defendant receives funding from state and federal sources, together

with private funding. It provides counseling and housing for clientele that suffer from a number of health and mental related problems. The clientele of Defendant is at least 80% black.

9. Shortly after Plaintiff began work with Defendant she noticed that when the clientele had needs that were covered within program mandates and were within budget, DeKruyff was often reluctant to authorize the expenditure. She would more quickly authorize the expenditure for white clientele than for the black clientele.

10. Plaintiff's subordinate, LaShae Hibbler (black) turned in her resignation. She changed her mind and sought to withdraw the resignation. DeKruyff told Plaintiff that the policy of Defendant was that once a resignation was submitted that it could not be rescinded and the person would have to go ahead and end their employment. Hibbler was not even allowed to work out her two week notice.

11. Shortly after this occurred with Hibbler, the Business Manager, Carianne Stinson (white) turned in her resignation. She indicated that she would be moving to Birmingham from Montgomery.

12. Shortly after Stinson turned in her resignation, Plaintiff was told by DeKruyff on November 9, 2005 that Stinson wanted to withdraw the resignation

3

because she had been unable to find a job in Birmingham making as much money. DeKruyff told Plaintiff that she had decided to allow Stinson to continue to do her job from Birmingham, only working one day a week without a reduction in pay.

13. On the morning of November 10, 2005, Plaintiff had a phone call with DeKruyff and raised the issue of discrimination. Plaintiff told DeKruyff that the job of business manager was too important and too time intensive for that to work. Plaintiff pointed out to DeKruyff that this action was racially discriminatory to allow Stinson to rescind her resignation, while not allowing Hibbler to do the same. Plaintiff told DeKruyff she should apply Defendant's policy consistently.

14. Later that day on November 10, 2005, Plaintiff sent a long email to DeKruyff. Plaintiff pointed out that it was race discrimination not to apply the policy equally between Hibbler and Stinson. Plaintiff asked DeKruyff if she was aware of the 1964 Civil Rights Act. Plaintiff also asked if DeKruyff was retaliating against Plaintiff because of the subject of her phone call that morning and actions DeKruyff had taken with Defendant thereafter. That evening by email, DeKruyff took away all Plaintiff's responsibilities over the Business Manager, Stinson.

15. The next day, November 11, 2005, Plaintiff had a meeting with her subordinates. The subject regarding how Stinson would be allowed to work one day a week came up at that time. Immediately following the meeting, DeKruyff

called Plaintiff and told her that Plaintiff's speaking to the management team was unprofessional.

16. On November 14, 2005 DeKruyff called a staff meeting of Plaintiff's subordinates. She told them of her decision to allow Stinson to continue her duties from Birmingham and asked what they thought. Plaintiff did not say anything. DeKruyff asked Plaintiff to comment. Plaintiff then told her, "you know what I will say," referring to the race discrimination that Plaintiff had already mentioned to her. She told Plaintiff to go ahead. Plaintiff mentioned that to the group and stated that she thought Defendant needed to apply their policies equally. After Plaintiff got out of the meeting, DeKruyff called Plaintiff and told her that Plaintiff was being derisive and should not have spoken to the staff as Plaintiff did. Plaintiff never raised her voice and was never derisive, other than to accuse DeKruyff of racial discrimination.

17. Shortly after the meeting on November 14, 2005 Plaintiff received a written disciplinary action for answering DeKruyff's question regarding her views on her proposal for Stinson.

18. On November 18, 2005 Plaintiff was terminated by DeKruyff in the presence of the Board Chairman, Belser, and another board member, Robert Sells. DeKruyff told Plaintiff that "our leadership styles were too different."

## IV. COUNT ONE -- RACE DISCRIMINATION

19. Plaintiff realleges and incorporates by reference paragraphs 1 through 18 above with the same force and effect as if fully set out in specific detail below.

20. Plaintiff was terminated for no legitimate reason.

21. Upon information and belief Plaintiff was replaced in her position by a white. Plaintiff was terminated for answering questions at a management meeting while white co-workers who did exactly the same thing were not terminated.

22. Defendant was impermissibly motivated by Plaintiff's race to take the discriminatory actions that it did against her while employed in terms of taking away management responsibilities, supervisory responsibilities, and subjecting Plaintiff to different discipline up to and including her termination of employment because of her race, black.

23. As a result of the illegal race discrimination engaged in by Defendant, Plaintiff has been damaged, and incurred loss of income, benefits and mental anguish.

## V. COUNT TWO – RETALIATION

24. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 23 above with the same full force and effect as if fully set forth herein.

25. Plaintiff stood up for the federally protected rights of Hibbler (black), prohibiting race discrimination. Plaintiff voiced to DeKruyff opposition to her

racially discriminatory practice of not allowing Hibbler to withdraw her resignation, while allowing Stinson to do so.

26. As a result of Plaintiff's complaints of race discrimination and DeKruyff's treatment of Hibbler versus Stinson, Plaintiff was relieved of her supervision of Stinson, called unprofessional for merely informing her staff of what DeKruyff had done, and then fired for no reason other than DeKruyff's statement that "our management styles are too different."

27. Plaintiff complained of race discrimination by DeKruyff verbally on the morning of November 10, 2005, by email later in the day on November 10, 2005, and in the staff meeting attended to by DeKruyff on November 14, 2005. Within days of these complaints of race discrimination, Plaintiff was terminated without cause or justification.

28. As a result of the illegal retaliation Defendant engaged in due to Plaintiff's legitimate concerns and complaints about the racially discriminatory application of policy to Plaintiff and co-workers, Plaintiff has been damaged, suffering loss of pay and benefits and mental anguish.

## VI. COUNT THREE – TORTIOUS INTERFERENCE IN BUSINESS RELATIONSHIP

29. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 28 above with the same full force and effect as if fully set forth herein.

30. After Plaintiff's termination from Defendant's employment, she has sought similar work for which she is well qualified with other organizations such as Defendant.

31. Plaintiff has received false references from DeKruyff in regards to her employment with Defendant, preventing her from obtaining work with other prospective employers who would have hired, but for the false, negative references by DeKruyff.

32. As a result of Defendant's tortuous interference with Plaintiff's potential business relationship with a new employer, Plaintiff has been damaged, suffering loss of pay and benefits and mental anguish.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII.

B. Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement to her job, front-pay, back-pay (plus interest) compensatory, punitive damages and/or nominal damages, injunctive and declaratory relief, and benefits.

  C. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

_____
DAVID R. ARENDALL

_____
ALLEN D. ARNOLD
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, Alabama 35203
205.252.1550 -- Office
205.252.1556 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY JURY**

_____
/OF COUNSEL

DEFENDANT'S ADDRESS:
Lighthouse Counseling Center, Inc.
c/o Any Officer or Agent
1415 East South Blvd
Montgomery, AL 36116

9

# EXHIBIT B

# TO

# PLAINTIFF'S COMPLAINT

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Cecelia Owens<br>2600 Vaughn Lakes Blvd.<br>Apt. 524<br>Montgomery, AL 36116 | From: | Equal Employment Opportunity Commission<br>1130 - 22nd Street, South<br>Suite 2000 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130 2006 01265 | Jeanne Walker | (205) 212-2055 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Beverly S. Hinton for*
Bernice Williams-Kimbrough, District Director

11 SEP 2006
(Date Mailed)

Enclosure(s)

cc: **Allen Arnold, Attorney**

Enclosure with EEOC
Form 161-B (3/98)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit <u>before 7/1/02</u> -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT A

# TO

# PLAINTIFF'S COMPLAINT

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA<br>X EEOC | 130.2006.01265 |

_____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Cecelia Owens | HOME TELEPHONE *(Include Area Code)*<br>334.270.0810 |
|---|---|
| STREET ADDRESS    CITY, STATE AND ZIP CODE<br>2600 Vaughn Lakes Blvd #524, Montgomery, AL 36116 | DATE OF BIRTH<br>08/09/59 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>Lighthouse Counseling Center, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>Over 15 | TELEPHONE *(Include Area Code)*<br>334.286.5980 |
|---|---|---|
| STREET ADDRESS    CITY, STATE AND ZIP CODE<br>1415 East South Blvd, Montgomery, AL 36116 | | COUNTY<br>Montgomery |
| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | COUNTY |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

RACE X    COLOR    SEX    HARASSMENT

RELIGION    NATIONAL ORIGIN    **RETALIATION XX**

AGE    DISABILITY

OTHER *(Specify)*

DATE FIRST or CONTINUING DISCRIMINATION TOOK PLACE AND DATE LAST DISCRIMINATION TOOK PLACE *(Month/Day/Year)*:

FIRST:

LAST: November 18, 2005

RECEIVED DEC 12 2005 E.E.O.C. BIRMINGHAM DISTRICT

**THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):**

**CHARGE OF DISCRIMINATION**

SSN:    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        Sex:  Female        Race:  African-American

**Please see following page for particulars.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>*[signature]*<br><br>SIGNATURE OF CECELIA OWENS<br>*[signature]* |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br>12/10/05    *[signature]*<br>Date    Cecelia Owens *(signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)*<br>10 December, 2005 |

*[Notary seal: MELODY E. WARE, NOTARY PUBLIC, GEORGIA, EXPIRES AUG. 18, 2008]*

EEOC FORM 5 (Rev. 06/92)

Page 2
Case 2:06-cv-00999-ID-CSC   Document 1-4   Filed 11/03/2006   Page 3 of 4
EEOC Charge of Cecelia Owens
Social Security Number: 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

150-2006-01265

1. I began work with Respondent on September 12, 2005 as the Deputy Director. As Deputy Director I had five director reports, including the business manager, who was in charge of finances of Respondent.

2. During the course of my employment I performed my job duties in at least a competent manner.

3. My primary job was to act as liaison between the staff and the Executive Director, Candyce DeKruyff (W). I also was grant writer.

4. Respondent receives funding from state and federal sources, together with private funding. It provides counseling and housing for clientele that suffer from a number of unfortunate situations, health and mental related problems and the like. The clientele of Respondent is at least 80% black.

5. Shortly after I began work with Respondent I noticed that when our clientele had needs that were covered within our program mandates and were within budget that DeKruyff was often reluctant to authorize the expenditure. She would more quickly authorize the expenditure of white clientele than for the black clientele.

6. I had a subordinate, LaShae Hibbler (B), who turned in her resignation. She changed her mind and sought to withdraw the resignation. DeKruyff told me that the policy of Respondent was that once a resignation was submitted that it could not be rescinded and the person would have to go ahead and end their employment. She was not even allowed to work out her two week notice.

7. Shortly after this occurred with Hibbler, the Business Manager, Carianne Stinson (W) turned in her resignation. She indicated that she would be moving to Birmingham from Montgomery.

8. Shortly after Stinson turned in her resignation, I was told by DeKruyff on November 9, 2005 that Stinson wanted to withdraw the resignation because she had been unable to find a job in Birmingham making as much money. DeKruyff told me that she had decided to allow Stinson to continue to do her job from Birmingham, only working one day a week without a reduction in pay. I told DeKruyff that the job of business manager was too important and too time intensive for that to work. I pointed out to DeKruyff that this action was racially discriminatory to allow Stinson to rescind her resignation, while not allowing Hibbler to do the same. I told her Respondent should apply its policy consistently.

9. On the morning of November 10, 2005 I had a phone call with DeKruyff and raised the issue of discrimination.

10. Later that day, on November 10, 2005 I sent a long email to DeKruyff. I pointed out that it was race discrimination not to apply the policy equally between Hibbler and Stinson. I asked if she was aware of the 1964 Civil Rights Act. I also asked her if she was retaliating against me based on her phone call of the day before. That evening by email, DeKruyff took away all of my responsibilities over the Business Manager.

11. On November 11, 2005 I had a meeting with my subordinates. The subject regarding how Stinson would be allowed to work one day a week came up at that time. Right after the meeting, DeKruyff called me and told

me that my speaking to the management team about her proposal was unprofessional.

12. On November 14, 2005 DeKruyff called a staff meeting of my subordinates with her. She told them of her decision to allow Stinson to continue her duties from Birmingham and asked what they thought. I did not say anything. DeKruyff asked me to comment. I then told her, "you know what I will say," referring to the race discrimination that I had already mentioned to her. She told me to go ahead. I mentioned that to the group and stated that I thought we needed to apply our policies equally. After I got out of the meeting, DeKruyff called me and told me I was being derisive and should not have spoken to the staff as I did. I never raised my voice and was never derisive, other than to accuse DeKruyff of racial discrimination.

13. Shortly after the meeting on November 14, 2005 I received a written disciplinary action for answering DeKruyff's question regarding my views on her proposal for Stinson.

14. On November 18, 2005 I was terminated by DeKruyff in the presence of the Board Chairman, Belser, and another board member, Robert Sells. DeKruyff told me that "our leadership styles were too different" and therefore, I was being terminated.

15. I believe that I was terminated because of my race, African American, and in retaliation for my questioning DeKruyff regarding her racial discrimination of clients and of the disparate treatment between Hibbler and Stinson in violation of Title VII of the Civil Rights Act of 1964.

_____
Cecelia Owens

The foregoing instrument was acknowledged before me this the 30 day of November, 2005, by Cecelia Owens.

_____
Notary Public

My commission expires: 1/2009

RECEIVED DEC 1 2 2005 E.E.O.C. BIRMINGHAM DISTRICT