**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK                                              TELEPHONE (334) 954-3600

# NOTICE OF CORRECTION

From:   Clerk's Office

Case Style:  Owens v. Lighthouse Counseling Center, Inc.

Case Number:    2:06-cv-00999-ID

Referenced Pleading:   Exhibit A attachment to Complaint -  doc. 1

**This Notice of Correction was filed in the referenced case this date to correct the PDF documents attached to this notice.  Please see the correct PDF documents to this notice.**

# EXHIBIT A

# TO

# PLAINTIFF'S COMPLAINT

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA | 130.2006.01265 |
| | X EEOC | |

_____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) Cecelia Owens | HOME TELEPHONE (Include Area Code) 334.270.0810 |
|---|---|
| STREET ADDRESS   CITY, STATE AND ZIP CODE 2600 Vaughn Lakes Blvd #524, Montgomery, AL 36116 | DATE OF BIRTH 08/09/59 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME Lighthouse Counseling Center, Inc. | NUMBER OF EMPLOYEES, MEMBERS Over 15 | TELEPHONE (Include Area Code) 334.286.5980 |
|---|---|---|
| STREET ADDRESS   CITY, STATE AND ZIP CODE 1415 East South Blvd, Montgomery, AL 36116 | | COUNTY Montgomery |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| STREET ADDRESS   CITY, STATE AND ZIP CODE | | COUNTY |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

**RACE X**   COLOR   SEX HARASSMENT

RELIGION   NATIONAL ORIGIN   **RETALIATION XX**

AGE   DISABILITY

OTHER *(Specify)*

DATE FIRST or CONTINUING DISCRIMINATION TOOK PLACE AND DATE LAST DISCRIMINATION TOOK PLACE *(Month/Day/Year)*:

FIRST:

LAST: November 18, 2005

RECEIVED DEC 12 2005 E.E.O.C. BIRMINGHAM DISTRICT

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):

**CHARGE OF DISCRIMINATION**

SSN:   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          Sex:   Female          Race:   African-American

**Please see following page for particulars.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) *[signature]* SIGNATURE OF CECELIA OWENS *[signature]* |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. 12/10/05 *[signature]* Date   Cecelia Owens *(signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 10 December, 2005 |

*[Notary seal: MELODY E. WARE, NOTARY PUBLIC, GEORGIA, EXPIRES AUG. 18, 2008]*

EEOC FORM 5 (Rev. 06/92)

1. I began work with Respondent on September 12, 2005 as the Deputy Director. As Deputy Director I had five director reports, including the business manager, who was in charge of finances of Respondent.

2. During the course of my employment I performed my job duties in at least a competent manner.

3. My primary job was to act as liaison between the staff and the Executive Director, Candyce DeKruyff (W). I also was grant writer.

4. Respondent receives funding from state and federal sources, together with private funding. It provides counseling and housing for clientele that suffer from a number of unfortunate situations, health and mental related problems and the like. The clientele of Respondent is at least 80% black.

5. Shortly after I began work with Respondent I noticed that when our clientele had needs that were covered within our program mandates and were within budget that DeKruyff was often reluctant to authorize the expenditure. She would more quickly authorize the expenditure of white clientele than for the black clientele.

6. I had a subordinate, LaShae Hibbler (B), who turned in her resignation. She changed her mind and sought to withdraw the resignation. DeKruyff told me that the policy of Respondent was that once a resignation was submitted that it could not be rescinded and the person would have to go ahead and end their employment. She was not even allowed to work out her two week notice.

7. Shortly after this occurred with Hibbler, the Business Manager, Carianne Stinson (W) turned in her resignation. She indicated that she would be moving to Birmingham from Montgomery.

8. Shortly after Stinson turned in her resignation, I was told by DeKruyff on November 9, 2005 that Stinson wanted to withdraw the resignation because she had been unable to find a job in Birmingham making as much money. DeKruyff told me that she had decided to allow Stinson to continue to do her job from Birmingham, only working one day a week without a reduction in pay. I told DeKruyff that the job of business manager was too important and too time intensive for that to work. I pointed out to DeKruyff that this action was racially discriminatory to allow Stinson to rescind her resignation, while not allowing Hibbler to do the same. I told her Respondent should apply its policy consistently.

9. On the morning of November 10, 2005 I had a phone call with DeKruyff and raised the issue of discrimination.

10. Later that day, on November 10, 2005 I sent a long email to DeKruyff. I pointed out that it was race discrimination not to apply the policy equally between Hibbler and Stinson. I asked if she was aware of the 1964 Civil Rights Act. I also asked her if she was retaliating against me based on her phone call of the day before. That evening by email, DeKruyff took away all of my responsibilities over the Business Manager.

11. On November 11, 2005 I had a meeting with my subordinates. The subject regarding how Stinson would be allowed to work one day a week came up at that time. Right after the meeting, DeKruyff called me and told

me that my speaking to the management team about her proposal was unprofessional.

12. On November 14, 2005 DeKruyff called a staff meeting of my subordinates with her. She told them of her decision to allow Stinson to continue her duties from Birmingham and asked what they thought. I did not say anything. DeKruyff asked me to comment. I then told her, "you know what I will say," referring to the race discrimination that I had already mentioned to her. She told me to go ahead. I mentioned that to the group and stated that I thought we needed to apply our policies equally. After I got out of the meeting, DeKruyff called me and told me I was being derisive and should not have spoken to the staff as I did. I never raised my voice and was never derisive, other than to accuse DeKruyff of racial discrimination.

13. Shortly after the meeting on November 14, 2005 I received a written disciplinary action for answering DeKruyff's question regarding my views on her proposal for Stinson.

14. On November 18, 2005 I was terminated by DeKruyff in the presence of the Board Chairman, Belser, and another board member, Robert Sells. DeKruyff told me that "our leadership styles were too different" and therefore, I was being terminated.

15. I believe that I was terminated because of my race, African American, and in retaliation for my questioning DeKruyff regarding her racial discrimination of clients and of the disparate treatment between Hibbler and Stinson in violation of Title VII of the Civil Rights Act of 1964.

*Cecelia Owens*
Cecelia Owens

The foregoing instrument was acknowledged before me this the 30 day of November, 2005, by Cecelia Owens.

*[signature]*
Notary Public

My commission expires: 1/2009

RECEIVED DEC 1 2 2005 E.E.O.C. BIRMINGHAM DISTRICT