IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CECELIA OWENS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   CASE NO.: 2:06CV999-1D |
| LIGHTHOUSE COUNSELING | ) |
| CENTER, INC., | ) |
| | ) |
|    Defendant. | ) |
| | ) |

## RESPONSE TO COMPLAINT

Comes now the defendant, Lighthouse Counseling Center, Inc., and in response to Plaintiff's Complaint states as follows:

1. Admitted, except that it is denied that there was any deprivation of rights secured by either Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1981.

2. Admitted, except that it is denied that there was any discriminatory act against plaintiff.

3. Admitted.

4. Admitted, except that it is denied that defendant conducts business in Birmingham. Defendant assumes that this was a typographical error and that Plaintiff intended to allege that Defendant did business in Montgomery, Alabama, which is admitted.

5. Defendant realleges its responses.

6. Defendant acknowledges that Defendant was hired on the date alleged as Deputy Director. For further answer, Defendant states that Plaintiff was fired on the recommendation of the then-Director of the Defendant, Ms. Candyce DeKruyff. Plaintiff was hired instead of two

1

qualified white applicants, despite the fact that Plaintiff did not meet all of the published qualifications for the job because Ms. DeKruyff sought a waiver of the un-met qualifications from the Board of the Lighthouse. Ms. DeKruyff knew the Plaintiff's race when she made this extraordinary effort to hire her.

It is true that, as Deputy Director, Plaintiff was responsible for overseeing the work of the program directors, including the business manager, but they and she were subject to the supervision of the Director. The Plaintiff did not perform in a competent manner. She was rude, insubordinate, refused to follow instructions, exercised poor judgment, was unyielding, contentious, and uncooperative. She attempted to intimidate her superior and her co-workers by falsely claiming racial discrimination. Defendant expects the evidence to show that these were personality traits that Plaintiff frequently has exhibited, including on the job she received after being terminated by the Defendant, a job from which she also was terminated.

7. Acting as a liaison between the staff and the director was one of Plaintiff's duties, a duty she very poorly performed. Writing grants also was one of Plaintiff's duties, another duty she poorly performed.

8. Admitted except that the Defendant does not keep records of the race of its clients. Defendant acknowledges that a majority of its clients are African American though Defendant questions what relevance that allegation has to this action.

9. Totally, wholly and completely denied.

10. Ms. Hibbler, who worked under Ms. Lisa Carroll resigned after her probationary period was extended due to problems with her performance. The remaining allegations are denied. For further answer, the Defendant believes that Ms. Hibbler said that she had considered rescinding her resignation but had not done so because of difficulties she had with her

supervisor. The allegations relating to a supposed policy against rescinding resignations are false, wholly made up by the Plaintiff.

11.   Admitted.

12.   Denied. Ms. Stinson's reason for withdrawing her resignation was the Board's request that she do so. Ms. Stinson was to continue to work a full work week. Ms. Stinson's resignation was not accepted because, unlike Ms. Hibbler, Ms. Stinson was considered to be an extremely valuable employee with crucial skills. Ms. Stinson agreed to the Board's and Director's requests and withdrew her resignation.

13.   It is true that there was a telephone conference between Plaintiff and Ms. DeKruyff and that Plaintiff fraudulently attempted to use "race" to force Ms. DeKruyff to accept her wishes on the business manager position. Plaintiff wanted to hire someone who she would select and gave no consideration to the wishes of the Board or her supervisor. Plaintiff's cynical use of "race" as a weapon was completely transparent because there was no similarity between an unsuccessful probationary employee [Hibbler] and a long term, highly valued member of the executive team [Stinson].

14.   It is admitted that Plaintiff tried to lay a protective coat over her improper actions by raising the issues of discrimination and retaliation. Her suggestion and questions were absurd. Defendant denies all claims of discrimination and retaliation.

15.   It is admitted that Plaintiff called a meeting of some of her subordinates but Defendant believes that it was on November 9, 2005. Plaintiff did not include the business manager who she wanted to replace in that meeting. She also did not advise her supervisor that she was doing this. Her purpose was to undermine the Director and the Board in their decision

to try to talk Ms. Stinson into remaining employed. It was unprofessional for Plaintiff to hold this meeting, and she was told that it was.

16. On November 14, 2005, Ms. DeKruyff held a regularly-scheduled meeting of the management team and included the Plaintiff. The allegations of the words said by Plaintiff and Ms. DeKruyff are essentially correct except there was no mention of race by Plaintiff or anyone else. The Plaintiff also had a good deal more to say than she alleges. She was very insubordinate in tone and said that she had thought that there would be a team effort but that the Executive Director was making the final decisions and that she [the Plaintiff] would have to live with it or leave. The Plaintiff was extremely "divisive" but not "derisive."

17. Denied. Plaintiff was sent a "coaching note" about this incident.

18. Admitted.

19. Defendant realleges its answers.

20. Denied.

21. The current Deputy Director is white. The "answering question " allegation is denied. Plaintiff was terminated because she was totally unwilling or unable to properly perform the duties of Deputy Director.

22. Denied.

23. Denied.

24. Defendant realleges its answers.

25. Denied.

26. Denied.

27. Denied except that the email made reference to racial discrimination. These allegations were frivolous and not made in good faith.

1080670

28. Denied.

29. Defendant realleges.

30. Defendant denies that Plaintiff possesses qualifications for work similarly to that assigned her by the Lighthouse. No such qualities were exhibited during her employment by the Defendant. Plaintiff sought and received other employment after her termination by the Lighthouse. She got herself fired from her subsequent employment for much the same reasons she was fired by Defendant.

31. Denied.

32. Denied.

## ADDITIONAL DEFENSES

33. <u>Same actor</u>. The same persons who hired Plaintiff, fired Plaintiff. Plaintiff was hired with knowledge of her race so it is presumed that her race was not a factor in her termination.

34. <u>Failure to mitigate</u>. Plaintiff has failed to mitigate her damages by getting herself fired from jobs following her termination by the Lighthouse and otherwise.

35. <u>Privilege</u>. Defendant asserts the privilege attaching to job reference responses.

36. <u>Truth</u>. To the extent that Defendant responded to any job reference requests, it responded truthfully and asserts that as a defense.

37. All of Defendant's actions regarding the Plaintiff would have been taken even if she were not in a protected class.

38. In the alternative to the above defenses, Defendant states that it did not intentionally, willfully, maliciously or deliberately violate any statute or law.

39. Plaintiff is estopped to seek the requested relief because of her own misconduct.

1080670

40. Defendant had a legitimate, non-discriminatory reason for every action taken against Plaintiff.

41. Plaintiff is not entitled to recover damages or other relief because of as-yet-undiscovered misconduct.

42. Plaintiff's claims are barred to the extent that she seeks to base her claims on events occurring outside the applicable statutes of limitations.

43. Plaintiff's Title VII claims are barred by a failure to exhaust her administrative remedies to the extent that any allegations were not raised in the charges of discrimination she filed with the EEOC.

44. Plaintiff's Title VII claims are barred to the extent that Plaintiff filed the complaint more than 90 days after she received notice of right to sue from the EEOC.

45. All or part of Plaintiff's punitive damages claims are barred because Defendant has made good faith efforts to comply with Title VII and all applicable anti-discrimination laws and did not act with malice or reckless indifference to Plaintiff's federally- protected rights.

46. Plaintiff's claims for damages are barred to the extent that she failed to make reasonable efforts to mitigate her damages.

47. Any award of punitive damages and/or damages for mental anguish or emotional distress would violate the constitutional safeguards provided under the Constitution of the United States and of the various states, including the Constitution of the State of Alabama.

48. Any award of punitive damages and/or damages for mental anguish or emotional distress to Plaintiff would violate the constitutional safeguards provided under the Constitution of the United States and the Constitution of the State of Alabama in that the determination of such damages under the applicable state law is vague, is not based on any objective standards, and is not rationally related to legitimate government interests.

49. Plaintiff's claims for punitive damages violate the separation of powers requirement of the constitutions of the various states, by allowing courts and juries, rather than a legislature, to determine what conduct constitutes punishable conduct and the amount of punishment therefore.

50. Plaintiff's claims for punitive damages violate the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments of the Constitution of the United States and Article I, §§ 1,

2, 6, 11, 13, 15, 22 and 35 of the Constitution of Alabama, and is improper under the statutes, common law, public policies and applicable rules of the State of Alabama, on the following grounds:

    (a)    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon Plaintiff's satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

    (b)    The procedures pursuant to which punitive damages are awarded and the guidelines given to jurors are vague and ambiguous and fail to provide specific standards on the determination of whether to award punitive damages or specific standards as to a constitutionally reasonable limit on the amount of any award against defendant, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

    (c)    The procedures pursuant to which punitive damages are awarded are vague and ambiguous and fail to provide specific standards for the amount of the award of punitive damages which allows jurors broad, unlimited and undefined power to make determinations based on passion, personal beliefs and/or uninformed ideas of what the law permits, rather than what the law requires;

    (d)    The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

    (e)    The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes on the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

    (f)    Any award of punitive damages to Plaintiff would violate the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution,

1080670

because punitive damages are penal in nature, yet a defendant may be compelled to disclose potentially incriminating documents and evidence;

(g)     Plaintiff's attempt to impose punitive or extra contractual damages on defendant on the basis of the conduct of others violates the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution;

(h)     Any award of punitive damages to Plaintiff would violate the procedural safeguards provided to defendant under the Sixth Amendment of the United States Constitution in that punitive damages are penal in nature, and consequently, a defendant in a case in which punitive damages are sought should be entitled to the same procedural safeguards accorded to a defendant in a criminal proceeding.  Since Alabama law and procedures which allow the imposition of punitive damages do not afford civil defendant the same protections afforded criminal defendant, awards of punitive damages result in an arbitrary deprivation of property in violation of the Constitution.

(i)     Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages, violates defendant's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution;

(j)     Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages, violates defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and as provided in the Constitution of the various states;

(k)     Plaintiff's claims for punitive damages violate equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Punitive damage awards discriminate against defendant in that the protections of criminal trials and the limiting of the amount of punitive damages awardable may be granted to some classes of defendant under certain states' law, but may be denied to these defendant and others similarly situated.

(l)     Any award of punitive damages would violate defendant's right to trial by jury in violation of the Seventh Amendment to the Constitution of the United States.

1080670

51. Plaintiff's claims for multiple and/or punitive damages and/or damages for mental anguish/emotional distress violate due process as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution, in that:

    a) there is no requirement that punitive damages be reasonably proportionate to any element of compensatory damages and/or to any legitimate interest to be advanced by the State;

    b) there is no requirement that punitive damages be reasonably proportionate to the act or omission sought to be punished;

    c) review of punitive damage awards for excessiveness without objective proportionality requirements and other objective requirements is wholly personal and subjective;

    d) punitive damages instructions insufficiently inform the jury as to the nature and purpose of punitive damages and the instructions are not saved by a post trial review at the trial and/or appellate levels;

    e) the preponderance of the evidence standard of proof, where applicable, is not high enough to satisfy due process where a defendant faces a punitive damage award;

    f) the criteria for an award of punitive damages and/or damages for mental anguish/emotional distress are impermissibly vague and uncertain;

    g) the criteria for review of an award of punitive damages and/or damages for mental anguish/emotional distress on appeal are impermissibly vague and uncertain;

    h) there are no meaningful standards provided by law for the imposition of punitive damages and therefore defendant has not been provided fair notice in advance of conduct that could result in punitive damages and/or the potential size of any award as a result of the alleged conduct; and

    i) the jury is instructed that punitive damages are permitted to set an example to deter others and/or otherwise relate to the conduct of others or the conduct of a defendant outside the scope of this litigation, subjecting a defendant to potential for multiple penalties for the same conduct, and/or to penalties for the conduct of others.

1080670

52. Plaintiff's claims for punitive damages are in contravention of Defendant's rights under each of the following constitutional provisions:

(a) Article I, § 8 of the United States Constitution, as an impermissible burden on interstate commerce, as an unlawful state regulation of interstate commerce and/or to the extent such an award punishes acts or omissions alleged to have occurred outside of this state;

(b) the Contracts Clause of Article I, § 10 of the United States Constitution;

(c) the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution;

(d) the Equal Protection Clause under the laws afforded by the Fourteenth Amendment to the United States Constitution;

(e) the constitutional prohibition against vague and overbroad laws;

53. With respect to Plaintiff' demand for punitive damages, defendant specifically incorporates by reference any and all standards or limitations regarding the determination, review and/or enforceability of punitive damage awards which arose in *BMW of No. America v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Cooper Industries, Inc., v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); and in *State Farm Mut. Auto. Ins. Co., v. Campbell*, 123 S.Ct. 1513 (2003).

54. Plaintiff's claims for the recovery of punitive damages are barred by Ala. Code § 6-11-20 (1993) et seq.

55. Plaintiff's claims for the recovery of punitive damages are barred by Ala. Code § 6-11-27 (1993).

56. An award of punitive damages in this case, if any, may not exceed the $250,000.00 cap set forth in Ala. Code § 6-11-21 (Supp. 1987); see *Goodyear Tire & Rubber Co., v.* Vinson, 749 So. 2d 393 (Ala. 1999) ("All parties litigating in the courts of this State should now be on notice that this Court is willing to reconsider the Henderson [,infra,] ruling that the punitive damages cap of § 6-11-21 Ala. Code 1975 is unconstitutional; see *Oliver v. Towns*, 770 So. 2d 1059 (Ala. 2000) ("[W]e question whether Henderson [v. Ala. Power Co.], 627 So. 2d 878 (Ala. 1993), remains good law.") (citing *BMW of No. America, Inc. v. Gore*, 517 U.S. 559 (1996); *Henderson*, 627 So. 2d at 894 (Maddox, J., concurring in part; dissenting in part);

1080670

*Henderson*, 627 So. 2d at 903 (Houston, J., dissenting); and *Pacific Mut. Life lns. Co. v. Haslip*, 499 U.S. 1, 20 n.9 (1991)). In declaring § 6-11-21 unconstitutional in *Henderson*, the Alabama Supreme Court acted beyond the scope of its powers and violated the separation of powers clauses of the United States Constitution and the Alabama Constitution. Accordingly, the Court's action in *Henderson* was without effect, and Alabama Code § 6-11-21 applies in this case.

57. While this defendant denies that it is liable for any conduct that would support an award of punitive damages in this case, this defendant pleads the applicable legislative cap and all pertinent provisions contained in *Alabama Code §* 6-11-21 (Supp. 1999).

58. The imposition of punitive damages against any of the Defendant in this case would violate the Defendant's due process rights as guaranteed by the United States Constitution, because the award of punitive damages is excessive in light of the following criteria: (1) the degree of reprehensibility of the defendant's alleged wrongful conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in other cases.

59. Imposition of punitive damages against this defendant would have a chilling effect upon the defendant's right to open access to the courts of this state, in violation of the United States Constitution and the Alabama Constitution, separately and severally.

60. Plaintiff's claims for punitive damages violate the rights of defendant to due process and equal protection of the laws as guaranteed by the Constitution of the United States and the Alabama Constitution, in that the procedures for post-trial review of such damages set forth in *Hammond v. City of Gadsden* and *Green Oil Company v. Hornsby* are unconstitutionally vague and inadequate in their failure to provide a clearly defined standard for courts to apply in the review of such damages; fail to provide an adequate review as to the issue of the need to deter, whether deterrence has been accomplished and whether punishment is appropriate; such procedures provide inadequate review and a vague standard regarding the relationship of such damages to the harm done; neither procedure addresses or cures the lack of guidelines provided juries in the assessment of such damages; that under *Hammond* and *Green Oil*, courts may take certain factors into consideration which lack predictable and objective standards of review and result in an inconsistent application of the factors and unpredictable and inconsistent results; and

*Hammond* and *Green Oil* fail to provide definite and meaningful constraints on jury discretion in awarding such damages.

  61. The procedures pursuant to which punitive damages are awarded subject civil defendant to punishment for the conduct of others through vicarious liability or through non-apportionment of damages among joint tortfeasors, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1 §§ 1 and 6 of the Alabama Constitution.

  62. Plaintiff is not entitled to recover punitive damages because Plaintiff cannot prove that defendant's conduct involved such malice, wantonness, oppression, fraud, willfulness, recklessness, or wickedness as amounts to criminality, which for the good of society and warning to the individual ought to be punished.

  63. To permit the imposition of punitive damages against this defendant on a joint and several liability basis is unconstitutional in that the damages are punitive in nature, yet there is no provision under the law of Alabama for the assessment of punitive damages separately and severally against joint tortfeasors even though the damages are predicated upon the alleged enormity of the wrong committed by the tortfeasor, and would violate defendant's rights to due process and equal protection of the laws under the Fifth and Fourteenth Amendments to the *Constitution of the United States*, and Article I, Sections 1, 6, 13 and 22 of the *Constitution of Alabama*.

  64. To permit the imposition of punitive damages against this defendant on a joint and several liability basis would violate defendant's rights under the Eighth Amendment to the *Constitution of the United States* and Article I, Section 15 of the *Constitution of Alabama* in that the award imposes an excessive fine against joint tortfeasors without any consideration being allowed to be given by the jury to the degree of culpability each defendant had, if any.

  65. The imposition of punitive damages in this case violates the double jeopardy clause of the Fifth Amendment of the *Constitution of the United States* as incorporated into the Fourteenth Amendment of the *Constitution of the United States*.

  66. Plaintiff's claims for punitive damages should not be submitted to the jury because, under the United States Supreme Court's holding in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 533 U.S. 424, 121 S. Ct. 1678, 149 L.Ed. 2d 674 (2001), and the Alabama Supreme Court's holding in *Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001),

the issue of punitive damages is not a question of fact to be decided by a jury. See also, *Gasperini v. Center for Humanties, Inc.*, 518 U.S. 415, 459, 116 S.Ct. 2211, 135 L. Ed. 2d 659 (1996).

67. An award of mental anguish damages in this case will violate this defendant's due process and equal protection rights guaranteed by the *Alabama Constitution* and *United States Constitution* because juries are not given any rules, standards, or guidelines upon which to rely in calculating mental anguish or emotional distress damage awards.

68. To award plaintiff damages for alleged mental anguish or emotional distress in the absence of any standards for the determination of mental anguish and/or the absence of any requirements for corroborating or objective evidence of mental anguish or emotional distress makes such an award tantamount to punitive damages. As such, this defendant avers that such an award in this case would violate both the *United States Constitution* and the *Alabama Constitution*.

69. At the time of the filing of this Answer, discovery is not yet complete. Defendant reserve the right to supplement its Answer with all such other and further defenses as may be warranted based on information learned in discovery.

WHEREFORE, the Defendant denies that Plaintiff is entitled to any of the relief requested in his Complaint or any relief whatsoever and Defendant respectfully requests that Plaintiff takes nothing by her Complaint and that Defendant be awarded its reasonable attorneys fees and costs and such other and further relief as the Court may deem just and proper.

Dated: November 27, 2006

                Respectfully submitted,

                **s/Bruce J. Downey, III**
                **BRUCE J. DOWNEY, III**
                **ASB-9205-W86B**

                **Attorney for Defendant**
                **Lighthouse Counseling Center, Inc.**

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama  36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of November, 2006, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

David R. Arendall, Esq.
Allen D. Arnold, Esq.
Arendall & Associates
2018 Morris Avenue, Third Floor
Birmingham, AL  35203

Troy R. King, Esq.
Attorney General
State Of Alabama
300 State House
11 S. Union St.
Montgomery, AL  36130

                                             **s/Bruce J. Downey, III**
                                             OF COUNSEL