IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CECELIA OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:06cv999-ID |
| | ) | |
| LIGHTHOUSE COUNSELING | ) | |
| CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The pro se plaintiff, Cecelia Owens ("Owens"), a former employee of the Lighthouse Counseling Center, Inc. ("Lighthouse"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981, alleging that she was discriminated and retaliated against on the basis of her race (African-American) when she was terminated from her employment.  She also asserts a state law claim of tortious interference with a business relationship.  Owens names the Lighthouse as the sole defendant in this action.

Owens seeks reinstatement, compensatory damages, punitive damages, injunctive relief, and attorney's fees.  The court has jurisdiction of the plaintiff's federal claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 28 U.S.C. § 2000e-5.  It has supplemental jurisdiction of the state law claim pursuant to 28 U.S.C. § 1367.

Now pending before the court is the Lighthouse's motion for summary judgment. Owens has filed a response in opposition to the motion. The court has carefully reviewed the defendant's motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. Based on that review, the court concludes that the Lighthouse's motion for summary judgment should be granted.

## II. THE SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute

---

[1] In *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), the court stated:

[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . .requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial . . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves . . .

of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995); *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989). However, *evidence* presented by the non-movant must be

believed and all justifiable inferences must be drawn in favor of the non-movant.[2] *Anderson*,

477 U.S. at 255.  After the non-moving party has responded to the motion for summary

judgment, the court must grant summary judgment if there remains no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P.

56(c).

## III. DISCUSSION

### A. FACTS

Viewed in the light most favorable to Owens and drawing all reasonable inferences

in her favor, the following facts are treated as undisputed for the purposes of summary

judgment.  The Lighthouse is a not-for-profit organization that provides counseling services

and outpatient substance abuse treatment in Montgomery, Alabama.  The Lighthouse is

governed by a Board of Directors that oversees the organization, but its daily operation is

under the authority of the Executive Director.  (Dep. Candyce DeKruyff at 29).  The plaintiff

was hired by the Executive Director Candyce DeKruyff ("DeKruyff") to serve as the Deputy

Director.  Because Owens did not meet all the written qualifications for the position,

DeKruyff sought and received a waiver from the Board of Directors to hire Owens.

Owens began work on September 12, 2005, when DeKruyff went on maternity leave.

While DeKruyff was on maternity leave, Owens was "[t]o oversee the agency and report

---

[2]  "[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

directly to the Executive Director." (*Id*. at 31).  The managers and staff, including business manager Carianne Stinson ("Stinson"), were to report directly to Owens in DeKruyff's absence.

Almost immediately, Owens encountered resistence from Stinson.  According to Owens,

> [f]rom day one of my employment, Stinson resented my presence, rejected my authority, and refused to be supervised by me.  Stinson was highly insubordinate in constantly by-passing the me (sic) on all decisions, organizational issues, budget issues, client and employee issues by reporting only to DeKruyff even though she was on leave at home.  Stinson made it very clear by her insubordinate actions that she was not going to communicate with me about anything and that she was not going to even acknowledge my presence in the organization, let alone my role. . . . Other executive employees as well as lower level employees complained to me about Stinson all the time.  Stinson was condescending, disrespectful, highly authoritarian, and right-winged in her interactions with everyone in the organization except DeKryuff (sic) who was not present.  Stinson did not like the fact that employees finally had me to voice their concerns and issues to.  Stinson and DeKryuff (sic) management styles were highly punitive in nature. . . . Stinson did not like the fact that I had gained respect from employees and had established a great rapore (sic) in a very short time.  Stinson was loosing (sic) control and she did not like it at all.  DeKryuff (sic) promised to deal with the issues when she returned from maternity leave.

(Pl's Aff. in Opp. to Mot. for Summ. J. at 3, ¶ 3).

Suffice it to say, Owens and Stinson did not work well together.  Consequently, when Stinson tendered her resignation on October 25, 2005, Owens accepted it with alacrity.[3]  (Pl's Ex. 8).

Although DeKruyff directed that the business manager position be advertised and that

---

[3]  Stinson's husband had accepted a job in Birmingham, Alabama.

resumes be accepted, unbeknownst to Owens, Stinson's resignation was not guaranteed. When Stinson informed the Board that she was resigning, the Board asked DeKruyff and Stinson to see if they "could work out an arrangement for her to stay on and work remotely from Birmingham." (DeKruyff's Dep. at 57; *see also* Def's Ex. I, Meeting Notes, Oct. 25, 2005).

On November 8, 2005, at 3:07 p.m., Owens sent DeKruyff an email informing her that the management team had selected three final candidates for the business manager position. (DeKruyff Dep. at 91-92).

On November 9, 2005, DeKruyff offered Stinson "the opportunity to rescind [her] resignation" and to "work remotely from Birmingham" as the Lighthouse's business manager. (Pl's Ex. 13). Stinson accepted.[4] (*Id*.). DeKruyff readily admits that she did not discuss this possibility with Owens because the Board directed her to work it out with Stinson. (DeKruyff's Dep. at 114).

At some point on November 9, DeKruyff notified Owens that Stinson was not resigning but was going to work remotely from Birmingham. Owens and the management team then met after lunch to discuss the proposal of allowing Stinson to work from Birmingham as the Lighthouse's business manager, but Stinson was not invited to the meeting. At 4:49 p.m., by email, Owens requested "an emergency management team

---

[4] On November 22, 2005, DeKruyff presented to the Board the proposal to allow Stinson to work remotely from Birmingham which had previously been approved by the Board's Executive Committee. (Pl's Ex. 9).

meeting" with DeKruyff to discuss the matter.

On November 10, 2005, at 9:08 a.m., DeKruyff emailed Owens and the management team informing them she was aware of "issues and concerns regarding the business manager position," but that she did not consider the matter to be an emergency.  She notified the team that she would address the matter when she returned from maternity leave on November 14, 2005.

Interpreting the "tone" of the email, Owens responded to DeKruyff's email with one of her own at 11:24 a.m.  In it, she asked DeKruyff if she was "retaliating against [her] for raising the issue of disparate treatment/possible discrimination of employees or for requesting to follow company policy?"  (Pl's Ex. 6).  Specifically, according to Owens, "[t]his issue of resignation and retraction and working in another city is unprecedented, and is a federal Civil Rights case in the making."  (*Id*.).  This was the first time Owens accused DeKruyff of discrimination and retaliation.  (DeKruyff's Dep. at 199-200).

In the email, Owens also explained why she did not invite Stinson to the meeting.

> Carianne was not invited or a part of this meeting because Carianne has not communicated with me as her supervisor any of these issues at hand for obvious reasons.  She continues to be insubordinate in every way as it relates to me as her supervisor.  The recent Mike King situation that cost the organization over $600 was a clear oversight on Carianne's part.  She was informed of the sensitive nature of the situation with this landlord last month, and she did not seek my counsel or direction in the handling of his rent checks.  Given the situation, I have done nothing unprofessional in my position as Deputy.

(Pl's Ex. 6).

Owens next sent an email to Stinson at 12:04 p.m., "reinstating" an October 18, 2005,

coaching note to Stinson's personnel file.  According to Owens, Stinson had failed to

demonstrate that she was not "insubordinate." Owens also accused Stinson of communicating

with her in "an unprofessional, rude or condescending manner." (*Id.*) Stinson responded to

Owens' email at 1:41 p.m..

At 6:43 p.m. on November 10, 2005, DeKruyff removed Stinson from Owens'

supervision. (*Id.*)

> Cecelia –
>
> It is apparent to me that you and Carianne have not been able to resolve the
> issues between you as seen in the e-mail that you sent her earlier today
> (referencing the coaching note of October 18, 2005) and which you copied me
> on.
>
> Therefore, I am removing you as Carianne's supervisor effective immediately,
> until such a time as I see fit to re-instate this supervisory relationship.  I
> appreciate your cooperation with this directive and I will also inform Carianne
> that she is to now report directly to me.

(*Id.*).  According to Owens, this is DeKruyff's first act of retaliation against her. (*Id.*)

On November 14, 2005, DeKruyff returned from maternity leave.  She promptly gave

Owens a coaching note regarding the team meeting on November 10, 2005.

> As per our conversation earlier today, I am very disturbed that you would
> either call or participate in a management team meeting to discuss the business
> manager position/Carianne (as stated in your email) without Carianne present.
> It is completely inappropriate and unprofessional to discuss these issues with
> Carianne's peers prior to discussing any concerns that you may have with me
> as your supervisor.  I also feel that your decision to do so shows very poor
> judgment and I have to say that I expect both a higher degree of
> professionalism and much more maturity in judgment from someone in the

Deputy Director position.  Your participation in a meeting of this nature is a divisive action and does not work towards the goal of teamwork that you say that you have.

(*Id*.)

Owens responded by accusing DeKruyff of reacting inappropriately.

Any inappropriateness in this business manager position has been by Carianne and yourself. . . The divisiveness in this situation is from you and Carianne. This coaching note is in retaliation for my bringing to your attention that your proposal is disparate and discriminatory against other employees in the same situation based upon their race and violates their civil rights and mine.

(*Id*.)

DeKruyff interpreted Owens' actions as "an attempt to undermine the authority of the Executive Director."  (DeKruyff Dep. at 274).  Owens was terminated on November 18, 2005.  Owens was subsequently replaced by a white female, Teresa Houser.

On November 28, 2005, Owens was hired by the Council on Substance Abuse ("COSA") by the president Alice Murphy ("Murphy").  (Def's Ex. H, Aff. Alice Murphy, ¶ 2).  Murphy fired Owens from COSA on February 6, 2006, because the agency

was dissatisfied with her performance and her attitude.  She made unjustified salary demands, caused morale problems, attempted to get another employee fired, and performed her tasks in a mediocre fashion.  She especially appeared to have exaggerated her experience in the area of grants.

(*Id*. at ¶ 3).  Murphy categorically denied that DeKruyff or anyone else from the Lighthouse played a role in Owens' termination.  (*Id*.).

Owens filed this action on November 3, 2006.

## B. RACE DISCRIMINATION CLAIM

Owens contends that she was subjected to a discriminatory termination based on her race in violation of Title VII and 42 U.S.C. § 1981.[5]  Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices.[6] *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  The plaintiff's claim is governed by the familiar tripartite framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981).  In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against her.  *Burdine*, 450 U.S. at 253.  This Circuit has consistently held that federal courts, in resolving discrimination claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment.  *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

To be successful, Owens must first prove, by a preponderance of the evidence, a prima facie case of discrimination.  *Burdine,* 450 U.S. at 252-53.  If she establishes a prima facie

---

[5]  The same prima facie elements are required to prove a 42 U.S.C. § 1981 discrimination claim as are required to prove a Title VII discrimination claim. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir. 1991).  Consequently, the court analyzes Owens' claims against Lighthouse within the Title VII analytical framework.

[6]  42 U.S.C.A. § 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

case, the Lighthouse then has the burden of producing "some legitimate, non-discriminatory reason" for the challenged employment action.  *See McDonnell Douglas,* 411 U.S. at 802. If the Lighthouse satisfies this burden, the plaintiff must then prove, by a preponderance of the evidence, that the articulated reasons were mere pretext for intentional discrimination. *Burdine,* 450 U.S. at 256.  In the summary judgment context, the plaintiff needs only present evidence from which a trier of fact could conclude the defendant intentionally discriminated against her.

To defeat the Lighthouse's motion for summary judgment, Owens must first establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell-Douglas*, *supra*; or (3) presenting statistical proof.[7]  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Because Owens has not presented direct or statistical evidence of discrimination, the court proceeds to evaluate her circumstantial evidence of racial discrimination under the four-part

---

[7] Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989).  The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See, e.g., Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).  This Circuit holds that a plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).  Owens does not argue that there exists direct evidence of intentional discrimination in this case, nor has she presented any statistical evidence supporting her claim of intentional discrimination.

*McDonnell-Douglas* test.

To establish a prima facie case of discriminatory discharge, Owens must show (1) that she is a member of a protected class; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4) that her former position was filled by a non-class member. *See Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989); *Cf., Evans v. McClain of Ga.*, 131 F.3d 957, 964 (11th Cir. 1997); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995). The parties do not dispute that Owens is African-American and that she was terminated. Nor do the parties dispute that Owens was qualified for her position[8] and that her position was filled by Teresa Houser, a white female. Consequently, the court concludes that the plaintiff has established a prima facie cases of discrimination.

Because Owens has established a prima facie case of discriminatory discharge, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for terminating Owens. *McDonnell-Douglas*, 411 U.S. at 802 - 804. The Eleventh Circuit holds that "[t]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). Moreover, the defendant's burden is "exceedingly light." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). The Lighthouse

---

[8] It is undisputed that DeKruyff sought a waiver to hire Owens because Owens did not meet the written requirements for the position of Deputy Director. However, the Lighthouse does not argue, and the court cannot conclude, that Owens was not qualified for the position of Deputy Director.

asserts that it terminated Owens because of her "uncongenial style of management." DeKruyff testified that it was her decision to terminate Owens, and she did so because Owens was insubordinate when she involved other employees in a team meeting regarding Stinson.  In addition, Owens was divisive, unprofessional, insubordinate, and uncooperative. The court concludes that the Lighthouse has offered legitimate, non-discriminatory reasons for terminating Owens.

At this juncture, to defeat the motion for summary judgment, Owens must present evidence creating a genuine issue of material fact on the issue of pretext because she "has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).  Owens can create a jury question by demonstrating that Lighthouse's legitimate, nondiscriminatory reasons should not be believed or by showing that in light of all the evidence, discriminatory reasons more likely motivated the Lighthouse's decision.  *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

> In order to show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).  "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. BP Oil Co*., 32 F.3d 520, 526 (11th Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  In evaluating a summary judgment motion, "[t]he district court

13

must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal citations omitted).

*Jackson v. State of Ala. State Tenure Comm.*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Owens asserts that Lighthouse's reasons for terminating her were pretextual because she performed her work well and there was no evidence that her work product was poor. Whether or not Owens performed her work well is immaterial. In evaluating a plaintiff's evidence of pretext, the court is not required to agree with the employer's proffered reasons for discharge. Instead, the crucial question is whether the employer was motivated by a racially discriminatory bias. *See e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998) (citing *Combs*, 106 F.3d at 1538).

It is at this juncture that her claim fails. Owens has come forward with no evidence to suggest that Lighthouse's reasons are pretext for race discrimination. Her own unsubstantiated opinion that the termination decision was somehow motivated by race is not an appropriate proxy for evidence. She presents no facts from which the court could conclude that her termination was due to her race nor does she point to any evidence to substantiate her allegations. Her self-serving rhetoric, with no attendant facts, is simply insufficient to defeat summary judgment. Owens offers no evidence, other than her own speculative opinion, that her termination are motivated by race discrimination. She cannot rely on her own unsubstantiated opinion that the decision was somehow motivated by an

14

improper motive. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.") The plaintiff has simply failed to come forward with any evidence that she was treated differently because of her race.

Although a *pro se* plaintiff, Owens is not absolved of her duty to provide the court with specific facts showing that there is a genuine issue for trial. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Owens cannot rely on conclusory evidence. *See e.g.*, *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996) (holding that "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext . . . where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions."). Owens has presented no evidence that her termination was based on improper motives.

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

The fact that Owens disagreed with DeKruyff's management style is not evidence of discrimination. Even if DeKruyff was a poor manager, it does not follow that her decision to terminate Owens was based on an impermissible reason such as race discrimination. Thus, Owens has failed to present sufficient evidence to demonstrate that any genuine issue of fact exists from which a reasonable fact finder could conclude that the Lighthouse's reasons for terminating her were pretextual and that the Lighthouse intended to discriminate against her on the basis of her race.

Liberally construing her pleadings as the court is required to do, Owens appears to argue that the Lighthouse's subjective reasons for her termination should not be believed. In this circuit, a "subjective reason is a legally sufficient, legitimate nondiscriminatory reason if a defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (*en banc*). While subjective reasons can be valid, the reasons must be capable of withstanding objective evaluation. *Id*.

Owens was employed by the Lighthouse for nine weeks. During that time, she and Stinson were unable to work together. When Stinson tendered her resignation, DeKruyff and the Board of Directors who valued Stinson as an employee, wanted her to continue working for Lighthouse. (Belser Dep. at 45, 70). DeKruyff, the executive committee of the Board and Stinson reached an agreement to allow Stinson to continue working from Birmingham.

It was not a decision with which Owens agreed, as her subsequent actions reflected.

DeKruyff testified that she decided to terminate Owens when Owens was unwilling to accept the Board's decision to allow Stinson to work from Birmingham. (DeKruyff Dep. at 223-25). DeKruyff considered Owens' action of meeting with the management team to be unprofessional, inappropriate, insubordination, and an attempt to undermine her authority. (*Id.*). DeKruyff articulates specific facts to support of her subjective reasons for terminating Owens. While the plaintiff may disagree that her actions warranted termination, the court does not examine the reasonableness of the action. *Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000) ("Although termination may, to some, seem a draconian response given the level of the Plaintiff's offense, the reasonableness of [the defendant's] disciplinary policies are not a consideration.")

The plaintiff has failed to meet her burden at the summary judgment stage. It is not necessary for Owens to prove that the Lighthouse's articulated reasons for terminating her are false. However, she must present sufficient evidence to demonstrate that a reasonable fact finder could conclude that the Lighthouse's reasons should not be believed. This she has not done. Regardless of whether Owens believes that her work performance was sufficient to continue her employment, she has presented no evidence that the decision to terminate her was racially motivated and that the Lighthouse's reasons for terminating her were pretextual. Accordingly, the court concludes that the defendant is entitled to summary judgment on this count.

### C.  Retaliation Claim

Owens also asserts a separate claim of retaliation pursuant to Title VII.[9]  In order to

establish a prima facie case of retaliation, Owens must demonstrate that (1) she participated

in protected expression; (2) she suffered an adverse employment action; and (3) there is some

causal relationship between the two events.  *Gutpa v. Fla. Bd. of Regents*, 212 F.3d 571, 587

(11th Cir. 2000) *abrogated on different grounds by Crawford v. Carroll*, 529 F.3d 961, 970-

71 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  The

causal connection requirement must be construed broadly.  *See generally E.E.O.C. v.

Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993) ("a plaintiff merely has to

prove that the protected activity and the negative employment action are not completely

unrelated").  Once the plaintiff makes out a prima facie case of retaliation, "the burden shifts

to the defendant to rebut the presumption of retaliation by producing legitimate reasons for

the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196

(11th Cir. 1997).  If the defendant offers a legitimate reason for the adverse employment

action, the presumption of retaliation disappears.  *Id*.  The plaintiff must then show that the

employer's proffered reasons for taking the adverse action were actually a pretext for

---

[9]  Title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (1982)

prohibited retaliatory conduct.  *Olmsted*, 141 F.3d at 1460.

Owens alleges that she was retaliated against for "raising the issue of racial discrimination and disparate treatment of an African-American employee."  (Pl's Res. in Opp. to Def's Mot. for Summ. J. at 3, ¶ 3).  Specifically, she told DeKruyff that by allowing Stinson to rescind her resignation, she was engaging in disparate treatment because LaShea Hibbler, a black female, was not permitted to withdraw her resignation. Owens contends that DeKruyff retaliated against her by verbally counseling her, accusing her of "unprofessional behavior and insubordination,"[10] and very shortly thereafter, terminating her.  Complaining about racial discrimination is a protected activity; termination is an adverse employment action; and termination within days of complaining about discrimination is a sufficient causal connection.  "This court has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  *E.E.O.C.*, 988 F.2d at 1571-72 *quoting Simmons v. Camden County Bd. of Ed.*, 757 F.2d 1187, 1189 (11th Cir. 1985).  Consequently, the court concludes that Owens has established a prima facie case of retaliation.

At this juncture, the burden shifts to Lighthouse to rebut the presumption of retaliation by offering legitimate reasons for Owens' termination.  DeKruyff testified about her reasons for terminating Owens.

---

[10]  To the extent that Owens complains that the November 14, 2005 coaching note was an act of retaliation, the law is clear that a negative performance evaluation does not constitute an adverse employment action for purposes of Title VII.  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1243 (11th Cir. 2001).

Q:      Well, would you please state again since you decided – or began to decide on November the 9th, what things specifically were helping you to decide that you're going to get rid of the Deputy Director so that the business manager could stay?

A:      Terminating you and [Stinson] staying are two separate issues. My belief that it was necessary that you no longer be at the Lighthouse began when you were unwilling to receive the information that I was working with the Board and choosing to maintain Carianne as an employee and work with her in that situation, that you then had this meeting with the management team and excluded Carianne, which showed an extreme level of unprofessionalism and inappropriate behavior. And in the fact that you continued to send e-mails and work within the system and around the system and undermine my authority with the members of the management team made it very apparent to me that you no longer needed to be the Deputy Director at the Lighthouse under my authority.

Q:      So are you considering – are you considering my disagreement with your decision or with your proposal, which was told to me at the time, are you considering that to be an unwillingness to accept what you wanted to do?

A:      It was your insubordination in response to that.

                    *       *       *

Q:      So what do you describe as insubordination?

A:      That you were unwilling to accept. Because after I gave you my response as to what I was planning to do in maintaining Carianne, that's when you chose to inform the management team, have – try and call me into an emergency meeting three days before I returned to work from maternity leave, and try and discuss the issues when it was settled.

(DeKruyff Dep. at 223-25).

        DeKruyff terminated Owens because she was   divisive, unprofessional, and uncooperative. DeKruyff considered Owens' actions regarding the team meeting without Stinson to be insubordinate. She also considered Owens' behavior indicative of her inability to work within a team setting, in particular with DeKruyff or Stinson. The reasons offered

by DeKruyff are legitimate, non-retaliatory reasons for terminating Owens' employment. Thus, Owens must now present some evidence to rebut DeKruyff's reasons for terminating her.  It is here that her retaliation claim fails.

> If the employer does so, the plaintiff must rebut that reason with evidence showing that it is a pretext for illegal discrimination. *See Id.* This requires "significant probative evidence" of pretext, not mere conclusory allegations. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th  Cir. 1996) (quotation marks and citation omitted).  Further, the focus is on the employer's beliefs rather than the employee's own perceptions. *See Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

*Latrece Lockett v. Choice Hotels Int'l., Inc.*, 2009 WL 468298, *6 (11th Cir. Feb. 26, 2009).

Owens presents no evidence that DeKruyff's reasons for terminating her were pretextual.  While Owens asserts that her termination was in retaliation for complaining about Hibbler's disparate treatment, she offers nothing except her hollow rhetoric and colorful hyperbole that she was retaliated against.   To defeat the motion for summary judgment, Owens must present evidence creating a genuine issue of material fact. Accordingly, the court concludes that the plaintiff has failed to meet her burden of establishing that the Lighthouse's reason for terminating her was pretext for retaliation. Lighthouse is entitled to summary judgment on the plaintiff's retaliation claim.

### D.  Tortious Interference with a Business Relationship Claim

Alabama recognizes a tort of intentional interference with business relations.  *See Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590 (Ala. 1986).

> We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:

(1)  The existence of a contract or business relation;

(2)  Defendant's knowledge of the contract or business relation;

(3)  Intentional interference by the defendant with the contract or business relation;

(4)  Absence of justification for the defendant's interference; and

(5)  Damage to the plaintiff as a result of defendant's interference.

*Gross*, 494 So. 2d at 597 (footnotes omitted).  *See also Lowder Realty, Inc. v. Odom*, 495 So.

2d 23, 25 (Ala. 1986); *Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994); *Teitel*

*v. Wal-Mart Stores, Inc.,* 287 F.Supp.2d 1268, 1279 (M.D. Ala. 2003) (citing *Parsons v.*

*Aaron*, 849 So. 2d 932, 946 (Ala. 2002)).

Owens contends that Lighthouse tortiously interfered with her employment with the

Council on Substance Abuse.

> I feel like the Lighthouse either made derogatory statements through communications with Alice Murphy, because it was directly afer January 25[th], a meeting when Candyce DeKruyff came to COSA and physically saw me there – I was in charge of that meeting – that my employment was terminated.
>
> And then, again, when the Lighthouse showed up at ths court proceeding between myself and Alice Murphy – the Lighthouse was there. There was a tape recording put up.  I didn't even know what was going on. Just all kinds of attempts to intimidate me during that proceeding.  I was never told by the judge or COSA's attorney that, okay – I just saw David Belser come up to the podium and place a tape recorder during my proceeding with another employer.
>
> All this was going on, so I feel like they interfered with a matter, really, that had nothing to do with them.

(Pl's Dep. at 206-07).

Owens has failed to allege the requisite elements of an intentional interference with

a business relation claim.  The plaintiff presents no *evidence* showing that anyone interfered

with her employment with COSA.  Although the plaintiff testified that "she feels" like Lighthouse employees interfered with her employment,  she does not point to any evidence that suggests that they did.  The plaintiff merely speculates that DeKyruff must have "slandered" her.  Conclusions based only on conjecture or speculation do not satisfy the plaintiff's burden to offer sufficient facts to defeat a defendant's properly supported motion for summary judgment.  The undisputed evidence before the court demonstrates that Alice Murphy, the President of COSA, did not speak to anyone from the Lighthouse until after Owens was terminated from COSA.  (Def's Ex. H, Aff. Murphy at ¶ 3).  "Neither Candyce DeKruyff nor anyone acting on behalf of The Lighthouse did anything that contributed to my decision regarding her discharge.  No one from the Lighthouse asked that she be fired, suggested that she be fired, or, in any way, caused me to fire Ms. Owens."  (*Id*.)

This court therefore concludes that the plaintiff has failed to present sufficient evidence demonstrating a genuine issue of material fact.  Consequently, the motion for summary judgment with respect to the plaintiff's tortious interference claim is due to be granted in favor of the Lighthouse.

## IV. CONCLUSION

Accordingly, for the reasons as stated,  it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion for summary judgment be GRANTED and that this case be DISMISSED with prejudice.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on

or before **April 27, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*.  See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of April, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

24